Edward J. Blum, State Bar No. 185163
**LAW OFFICE OF EDWARD J. BLUM**
3700 Wilshire Blvd., Suite 950
Los Angeles, California 90010
Phone:  (213) 479-5322; Fax:  (323) 383-9910
Email:  edblum@duidefenseLA.com

Attorney for Steven Aquino

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN AQUINO, an individual,<br><br>       Plaintiff,<br><br>vs.<br><br>KIRSTJEN NIELSEN, Secretary, United States Department of Homeland Security, a government entity,<br><br>       Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL** |

## COMPLAINT

COMES NOW Plaintiff, STEVEN AQUINO, (hereinafter "Plaintiff"), by and through his undersigned counsel, hereby sues Defendant, KIRSTJEN NIELSEN, Secretary of the United States Department of Homeland Security (hereinafter referred to as "Defendant"), and states as follows:

### NATURE OF THE ACTION

Plaintiff brings this lawsuit to remedy acts of employment discrimination perpetrated against him by Defendant in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991, including discrimination based on race, sex, and color.  Plaintiff's allegations are discussed in greater particularity in paragraphs 20 through 59 below.

## JURISDICTION

1.    This Honorable Court has jurisdiction over the subject matter of this employment discrimination action as Defendant is the head of a branch of the Federal Government, and as such, this court has jurisdiction under 28 U.S.C. § 1346.

2.    Jurisdiction over this matter is also properly invoked under 28 U.S.C. § 1331, which conveys federal question jurisdiction and specifically under 28 U.S.C. §§ 1343(3), 1343(4).

3.    The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

4.    This Honorable Court also has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1337.

5.    This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, which grants jurisdiction over civil actions which seek monetary damages, equitable, and declaratory relief for violations of civil rights.

## VENUE

6.    This action properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391, in that the conduct complained of occurred within the Central District of California, and that the Defendant, as the

Secretary for the DEPARTMENT OF HOMELAND SECURITY ("DHS"), is the designated official responsible for the conduct of the personnel for the TRANSPORTATION SECURITY ADMINISTRATION ("TSA") at Los Angeles International Airport ("LAX"), located in the City of Los Angeles, County of Los Angeles, State of California.

7.     Venue is also proper in the Central District of California under 42 U.S.C. § 2000e-5(f)(3); as (a) Plaintiff was employed by DHS and the TSA in this judicial district at the time of his removal from federal service, (b) Plaintiff's employment records are maintained by the DHS & TSA in this judicial district, (c) decisions adverse to Plaintiff's employment that are the subject of this civil action were made in the Central District of California, and (d) because a substantial part of the events or omissions giving rise to this lawsuit occurred in the Central District of California.

## PARTIES

8.     At all relevant times herein, Plaintiff was a natural person *sui juris* residing within the County of Los Angeles, State of California, and at all relevant times herein, Plaintiff was employed by the DHS and TSA in the City of Los Angeles, County of Los Angeles, State of California.

9.     At all relevant times herein, Plaintiff was a "person" covered by Title VII as defined in 42 U.S.C. § 2000e(a).  At all relevant times herein, Plaintiff was an "employee" covered by Title VII as defined in 42 U.S.C. § 2000e(f).

10.     The DHS was established by the Homeland Security Act of 2002, is the third largest Cabinet department of the United States federal government, and is charged with the responsibility of protecting the territory of the United States from

terrorist attacks and responding to natural disasters.  One of the agencies commanded by Defendant is the TSA, which conducts business, maintains employees and operates as a safety and security-screening agency in this judicial district and throughout the country.  The Defendant is headquartered in Washington, D.C.

11.     Defendant is the head of the DHS and the sole Defendant in this case. See 42 U.S.C. § 2000e-16(a) and (c).  At all relevant times herein, DHS is and was an "executive agency" as provided in 5 U.S.C. § 105, and as incorporated in 42 U.S.C. § 2000e-16, is "an Executive Department, a Government corporation, or an independent establishment."

12.     The TSA, where Plaintiff worked, was transferred to the DHS pursuant to the Department of Homeland Security Act of 2002, section 424, effective March 1, 2003. Defendant therefore has the full responsibility for administration of all programs within the TSA, including the employment policies and practices of TSA in all regions and in a position to create and implement policy to eliminate and prevent any form of discrimination and retaliation and to provide complete relief for Plaintiff.  Defendant is sued in her official capacity.

13.     The TSA, as a component of DHS, is responsible for the security of all modes of transportation including aviation, rail, highways and pipelines. The vast majority of TSA's resources are dedicated to aviation, and as such, TSA oversees the passenger safety and security measures at 450 of the nation's commercial airports, including airports throughout the Central District of California.  The headquarters of the TSA in Southern California, including LAX and other airports, is located in Los Angeles, California.

14.     All operational instructions and policies and procedures and discipline originate at the National Headquarters of the DHS and TSA, are transmitted to LAX, and from there, Boyd Keith Jeffries, the Federal Security Director at TSA/LAX, has the responsibility, along with his immediate subordinates, to implement instructions, policies, procedures and discipline.  At all relevant times herein, TSA/LAX, under color of DHS, operated and/or managed and or supervised and did maintain TSA employees, agents, and/or representatives from TSA/LAX, including, but not limited to, Assistant Federal Security Director for Screening Brian Bondoc ("Bondoc"), Deputy Federal Security Director Martin Elam ("Elam"), as well as the Plaintiff.

15.     Defendant is and was conducting business within the State of California, having an office located in the County of Los Angeles, and was also Plaintiff's employer.

16.     Defendant is a person engaged in an industry affecting commerce who has fifteen (15) or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year in accordance with 42 U.S.C. § 2000e(b).

17.     The term "employer" under the Title VII liability scheme is defined to include any agent of the DHS and TSA as stated in 42 U.S.C. § 2000e(b).  Thus, all supervisory personnel and other agents of DHS and TSA described herein are themselves employers for purposes of liability.

18.     At all relevant times herein, all supervisory personnel and other agents of TSA described herein were the agents, servants, or employees of Defendant, and at all times were acting within the course and scope of said agency, service, or employment.

19.     At all relevant times herein, all supervisory personnel and other agents of TSA described herein acted with the knowledge, consent, and/or ratification of Defendant.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

20.     At all relevant times herein, Plaintiff is mixed race (e.g. Hispanic/Indian); his sex/gender is male; his skin color is medium brown; and he was born on May 30, 1989.  At the time of his removal from the Agency, he was 24 years, 8 months, 26 days excluding February 25, 2014.  Plaintiff is a Hispanic male who is medium brown in skin color.

21.     At all relevant times herein, Plaintiff was a Lead Transportation Security Officer ("LTSO") at LAX from on or about August 24, 2011 until he was removed from federal service on or about February 25, 2014.

22.     On June 21, 2013, at approximately 2310 hours, at the Bellagio Hotel and Casino, the Las Vegas Metropolitan Police Department arrested and charged Plaintiff with a gross misdemeanor violation Nevada Revised Statute ("NRS") § 206.310- Injury to other property, and NRS 193.155, - Gross Misdemeanor.

23.     On or about June 21, 2013, Plaintiff requested that arresting officer M. Murray inform his employer that he had been arrested.  Officer M. Murray informed Plaintiff's supervisor Supervisory Transportation Security Officer ("STSO") Ruben Varella that Plaintiff was arrested on or about June 11, 2013.

24.     On or about January 6, 2014, Plaintiff accepted responsibility for actions and pled guilty to a misdemeanor violation of NRS § 106.310 - Injury to other property.

25.     On or about February 8, 2014, Plaintiff was issued a Notice of Proposed Removal ("Notice 1") by Bondoc for the sole charge of *off-duty misconduct*.  Material relied upon to support Notice 1 was also provided to Plaintiff.  Notice 1 alleged that Plaintiff's off-duty misconduct violated the following TSA policies:  TSA Management Directive No. 1100.73-5:  Employee Responsibilities and Code of Conduct, Section 5 - 5.A and 5.A (7); and Section 6 - Policy: 6.A and 6.E.

26.     Plaintiff responded to the Notice of Proposed Removal orally and in writing.

27.     On or about March 1, 2014, Plaintiff was issued a Notice of Decision on Proposed Removal ("Notice 2") by Elam.  Prior to his removal from federal service on or about March 1, 2015, Plaintiff had no prior discipline.

28.      On or about March 28, 2014, Plaintiff appealed his removal from federal service to TSA's Office of Professional Responsibility, Appellate Board.

29.      On or about April 30, 2014, TSA's Office of Professional Responsibility, Appellate Board issued an opinion and decision sustaining Plaintiff's removal from federal service.

30.      On or about August 8, 2014, Plaintiff discovered that there were several similarly situated TSA employees who were proposed for removal from federal service for same and/or similar misconduct and Elam acted as the deciding official.  One of those employees was STSO Gregory Barnes ("Barnes").

31.     On December 14, 2011, the Superior Court of California Los Angeles County opened Case No. 1CA06236, People of the State of California vs. Gregory Barnes, against Barnes for criminal charges stemming from an incident that occurred on

or around August 27, 2011.  Specifically, criminal charges were filed against Barnes for two (2) misdemeanor counts of violating Penal Code § 242-243(E)(1) - Domestic Battery, and one (1) misdemeanor count of violating Penal Code § 236 - False Imprisonment.  Barnes failed to report his summons to appear before a court to Defendant within twenty-four (24) hours of your notification, or as soon as possible thereafter as required by policy.

32.     On January 4, 2012, Barnes was scheduled to appear before the court to address two (2) misdemeanor counts of violating PC § 242-243(E)(1) - Domestic Battery, and one (1) misdemeanor count of violating PC § 236 - False Imprisonment. On January 4, 2012, Barnes failed to appear before the court and failed to send representation.  As a result, a bench warrant in the amount of $20,000 was issued for his arrest.

33.     On February 27, 2012, a protective order was granted ordering Barnes to stay 100 yards away from his victim Sarah Williams.

34.     On April 9, 2012, Barnes accepted a plea deal and he was found guilty of Penal Code § 236 - False Imprisonment.  As a result of his misdemeanor conviction, Barnes was sentenced to serve a three (3) year summary probation, pay $590 in fines, perform thirty (30) days of community service, serve forty-five (45) days in a Los Angeles County Jail, attend a domestic violence counseling program, attend fifty-two (52) Alcohol Anonymous (AA) meetings, and to obey the issued protective order.

35.     On or about April 24, 2012, Barnes was issued a Notice of Proposed Removal ("Notice 3") from Assistant Federal Security Director for Screening Daniel Wyllie for his *off-duty misconduct* and *failure to timely report court summons* as

described in paragraphs 31 through 34 above.  Specifically, Barnes was charged with two (2) specifications of off-duty misconduct and one specification of failure to timely report court summons.

36.     Notice 3 alleged that Barnes' <u>off-duty misconduct</u> violated the following TSA policies:  TSA Management Directive No. 1100.73.5 (Employee Responsibilities and Code of Conduct) Sections; 5.A, 5.A.(7), 5.B.(3), 6.A, and 6.C.  Notice 3 also alleged that Barnes' <u>failure to timely report court summons</u> violated the following TSA policies:  TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code Conduct, Section: 5.A, 5.A.(7), 5.A.(8), 6.A and 6.C.

37.     Barnes responded to Notice 3 both orally and in writing.

38.      On or about May 28, 2014, Barnes was issued a Notice of Decision on Proposed Removal ("Notice 4") by Elam.  In Notice 6, Elam concluded that Sanchez violated TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct) Sections:  5.A, 5.A.(7), 5.A.(8), 5.B.(3), 6.A, and 6.C.  Barnes was not removed from federal service by Elam.  Instead, Elam demoted Barnes to TSO.  Prior to receiving Notice 4, Barnes was issued prior discipline.

39.     Barnes is a dark-skinned African-American male.

40.     Plaintiff requested informal EEO counseling more than 45 days after he was removed from Federal Service only because he did not learn that he was treated differently than other similarly situated TSA employees until on or about August 8, 2014.

41.     In 2014, "failure to report an arrest," "failure to report a citation," and "failure to report a summons" all violated TSA Management Directive No. 1100.73-5, § 5.A.(8).

42.     In 2014, Barnes and Plaintiff each engaged in "off-duty misconduct" in violation of TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct), §§ 5.A., 5.A.(7), and 6.A.

43.     In 2014, the scope of TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct) § 5.A applied equally to all TSA organizational elements and all TSA employees, including but not limited to, all Transportation Security Officers ("TSOs"), LTSOs, and STSOs.

44.     In 2014, the scope of TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct) § 5.A.(7) equally applied to all TSA organizational elements and all TSA employees, including but not limited to, all TSOs, LTSOs, and STSOs.

45.     In 2014, the scope of TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct) § 6.A applied equally to all TSA organizational elements and all TSA employees, including but not limited to, all TSOs, LTSOs, and STSOs.

46.     In 2014, the scope of TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct) § 5.A.(8) applied equally to all TSA organizational elements and all TSA employees, including but not limited to, all TSOs, LTSOs, and STSOs.

47.     In 2014, TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct) § 5.A.(8) required Barnes to report all personal arrests, including summons and citations to appear before a court, to the immediate supervisor or to any manager in the chain of supervision within 24 hours of the arrest or

as soon as possible thereafter.  Elam concluded that Barnes failed to failure to timely report court summons in violation of TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct) § 5.A.(8).

48.    In 2014, Elam also found that Barnes violated TSA Management Directive No. 1100.73-5, § 5.A.(8).

49.    Elam concluded that Barnes' alleged domestic battery and/or false imprisonment for which Barnes served forty-five (45) days in jail was less egregious than Plaintiff's crime against property.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

50.    Plaintiff has met all procedural requirements for filing this Complaint.

51.    Plaintiff first requested EEO counseling in this matter on or about September 17, 2014, which was within 45 days of discovering the employment discrimination as alleged.

52.     On or about December 15, 2014, Defendant informed Plaintiff of the conclusion of EEO counseling and provided Plaintiff a Notice of Right to File a Formal Complaint of Discrimination.  Plaintiff received the Notice of Right to File a Formal Complaint of Discrimination on or about February 9, 2015.  Plaintiff submitted a formal charge of Discrimination to Defendant on or about February 18, 2015, which was within fifteen (15) days of receipt of the Notice of Right to File a Formal Complaint of Discrimination on February 9, 2015.  Defendant acknowledged receipt of the formal complaint on or about April 29, 2015.

53.    On or about May 20, 2015, Defendant accepted the following claim for investigation:

"Whether Complainant, a former Lead Transportation Security Officer (LTSO), at the Los Angeles International Airport, in Los Angeles, California, was discriminated against based on race (Hispanic) and color (medium brown), when on February 25, 2014, he was removed from Federal Service."

54.   Defendant investigated Plaintiff's claim between on or about May 20, 2015 through on or about October 1, 2015.  At the conclusion of the investigation on or about October 1, 2015, Defendant provided Plaintiff with a copy of the report of investigation and notice of his right to request a hearing before an EEOC Administrative Judge ("AJ") or, alternatively, to request a Final Agency Decision.

55.   Plaintiff requested a hearing before an AJ and on or about October 29, 2015.

56.   On or about February 23, 2018, an AJ granted Defendant's Motion for a Decision Without a Decision pursuant to 29 C.F.R. § 1614.109(g).

57.   On or about April 4, 2018, pursuant to 29 C.F.R § 1614.110(a), Defendant took final action on Plaintiff's complaint by issuing a final order.  Plaintiff received Defendant's final agency decision on or about April 9, 2018.

58.   On or about May 14, 2018, Plaintiff timely filed a Notice of Appeal of Defendant's final order with the EEOC's Office of Federal Operations ("OFO").

59.   On or about September 27, 2018, the OFO affirmed Defendant's final order.  Plaintiff received the OFO decision on or about October 2, 2018. Therefore, Plaintiff has brought this action within the time limits established in 42 U.S.C. § 2000e-16(c).  Accordingly, Plaintiff has exhausted his administrative remedies.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## (**Discrimination on the Basis of Race/National Origin in Violation of Title VII**

## (**Disparate Treatment**)

60.     Paragraphs 20 through 59 above are hereby incorporated by reference as though fully set forth in this claim.

61.     At all relevant times herein, Plaintiff's race/national origin was mixed race (Hispanic/Indian); a class protected by law.  Defendant treated Plaintiff differently than similarly situated individuals outside the Plaintiff's protected class because of his membership in the aforementioned protected class.  In other words, Defendant did not propose removal nor remove other, non-mixed race (Hispanic/Indian) employees who engaged in more egregious conduct than Plaintiff.

62.     Title VII, as amended, makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race/national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).  Title VII, as amended, also adds that ". . . an unlawful employment practice is established when the complaining party demonstrates that race/national origin . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

63.     Defendant through her officers, agents, and/or employees acting within the scope of their employment, discriminated against Plaintiff on the basis of his race/national origin (mixed race - Hispanic/Indian) in violation of 42 U.S.C.A. § 2000e-

2(a)(1) by engaging in a course of conduct which included, but is not limited to, at least some of the acts set forth above.

64.     At all relevant times herein, Plaintiff was undeniably qualified for the TSO position because he satisfactorily performed the duties of a LTSO without limitation or restriction from on or about August 24, 2011 until February 25, 2014 and he was fully capable of performing the essential duties of a LTSO from on or about August 24, 2011 until February 25, 2014.  Additionally, since Plaintiff began his employment with Defendant on or about May 24, 2010, he met legitimate performance expectations of Defendant for each fiscal year because he received either an "Achieved Expectations, Exceeded Expectations, and/or Achieved Excellence" rating on each his performance evaluation and he had no prior formal discipline in his official personnel file before he was removed from federal service on or about February 25, 2014.

65.     Plaintiff suffered an adverse employment action – his removal/termination from federal service effective on or about February 25, 2014.

66.     Similarly situated employees to Plaintiff and not within Plaintiff's protected class were treated more favorably than Plaintiff by Defendant.  Specifically, as referenced herein, a similarly situated employee who engaged in off-duty misconduct more egregious than Plaintiff (e.g. Barnes), was not similarly removed from federal service.

67.     Barnes is a proper comparable employee in all material aspects because he were charged with off-duty misconduct like Plaintiff; and they were subject to the same TSA policies, including but not limited to, TSA Management Directive No.

1100.73-5:  Employee Responsibilities and Code of Conduct, Section 5 - 5.A, 5.A (7), 5.A (8), 5.B.(3); and Section 6 - Policy: 6.A.

68.    There was no legitimate, non-discriminatory reason for the differing treatment of Plaintiff and the similarly situated employee referenced herein (e.g. Barnes).  In fact, the differing treatment of Plaintiff and the similarly situated employee referenced herein (e.g. Barnes) and reasons in support thereof for Plaintiff's removal from federal service are arbitrary, capricious, and pretextual.

69.    Defendant's discrimination against Plaintiff on the basis of his race/national origin (mixed race - Hispanic/Indian) in violation of 42 U.S.C.A. § 2000e-2(a)(1) was a substantial and/or motivating reason for Plaintiff's unlawful removal from federal service.

70.    Defendant's conduct violated the provisions of Title VII, as amended, (42 U.S.C. § 2000e et seq.) which constitutes fundamental public policy declaring it to be illegal to discriminate against an employee based upon the employee's race/national origin.  Indeed, Defendant's conduct was discriminatory in its disparate treatment of Plaintiff based on race/national origin.

71.    As a direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e-2(a)(1), Plaintiff has suffered general and special damages, including lost wages, lost benefits, lost seniority, lost future earnings, lost employment opportunities, emotional distress, anxiety, humiliation, embarrassment, and loss of self-esteem in an amount to be determined at trial.  Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory

practices unless the Court grants relief.  Therefore, Plaintiff seeks all legal and equitable remedies available at law.

72.     As a further direct and proximate result of Defendant's violation of 42 U.S.C.A. §2000e-2, Plaintiff has been compelled to retain the services of the Law Offices of Edward J. Blum and will continue to incur legal fees and costs.  Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C.A. § 2000e-5(k) and 29 U.S.C. § 2000e-16(d) where in any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, a reasonable attorney's fee (including expert fees) as part of the costs, and the United States shall be liable for costs the same as a private person.

## SECOND CAUSE OF ACTION

**(Discrimination on the Basis of Color in Violation of Title VII (Disparate Treatment)**

73.     Paragraphs 20 through 59 above are hereby incorporated by reference as though fully set forth in this claim.

74.     At all relevant times herein, Plaintiff is medium brown in skin color; a class protected by law.  Defendant treated Plaintiff differently than a similarly situated individual outside the Plaintiff's protected class because of his membership in the aforementioned protected class.  In other words, Defendant did not propose removal nor terminate another similarly situated employee (e.g. Barnes) who was darker skinned than Plaintiff and who engaged in conduct similar to his own—such as off-duty misconduct.

75.     Title VII, as amended, makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's color . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII, as amended, also adds that ". . . an unlawful employment practice is established when the complaining party demonstrates that color . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

76.     Defendant through its officers, agents, and/or employees acting within the scope of their employment, discriminated against Plaintiff on the basis of his color (medium brown) and/or his skinned color which was lighter than a comparable employee (e.g. Barnes) in violation of 42 U.S.C.A. § 2000e-2(a)(1) by engaging in a course of conduct which included, but is not limited to, at least some of the acts set forth above.

77.     At all relevant times herein, Plaintiff was undeniably qualified for the TSO position because he satisfactorily performed the duties of a LTSO without limitation or restriction from on or about August 24, 2011 until February 25, 2014 and he was fully capable of performing the essential duties of a LTSO from on or about August 24, 2011 until February 25, 2014.  Additionally, since Plaintiff began his employment with Defendant on or about May 24, 2010, he met legitimate performance expectations of Defendant for each fiscal year because he received either an "Achieved Expectations, Exceeded Expectations, and/or Achieved Excellence" rating on each his performance evaluation and he had no prior formal discipline in his official personnel file before he was removed from federal service on or about February 25, 2014.

78.     Plaintiff suffered an adverse employment action – his removal/termination from federal service effective on or about February 25, 2014.

79.   A similarly situated employee to Plaintiff (e.g. Barnes) who was darker in skin color was treated more favorably than Plaintiff by Defendant.  Specifically, as referenced herein, similarly situated employees who were either lighter or darker in skin color than Plaintiff who engaged in conduct similar to his own—such as off duty misconduct (e.g. Barnes).

80.   Barnes is a proper comparable employees in all material aspects because he were charged with off-duty misconduct like Plaintiff; and he were subject to the same TSA policies, including but not limited to, TSA Management Directive No. 1100.73-5: Employee Responsibilities and Code of Conduct, Section 5 - 5.A, 5.A (7), 5.A (8), 5.B.(3); and Section 6 - Policy: 6.A.

81.   There was no legitimate, non-discriminatory reason for the differing treatment of Plaintiff and the similarly situated employee referenced herein (e.g. Barnes).  In fact, the differing treatment of Plaintiff and the similarly situated employee referenced herein (e.g. Barnes) and reasons in support thereof for Plaintiff's removal from federal service are arbitrary, capricious, and pretextual.

82.   Defendant's discrimination against Plaintiff on the basis of his color (medium brown) in violation of 42 U.S.C.A. § 2000e-2(a)(1) was a substantial and/or motivating reason for Plaintiff's unlawful removal from federal service.

83.   Defendant's conduct violated the provisions of Title VII, as amended, (42 U.S.C. § 2000e et seq.) which constitutes fundamental public policy declaring it to be illegal to discriminate against an employee based upon the employee's color.  Indeed, Defendant's conduct was discriminatory in its disparate treatment of Plaintiff based on color.

84.     As a direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e-2(a)(1), Plaintiff has suffered general and special damages, including lost wages, lost benefits, lost seniority, lost future earnings, lost employment opportunities, emotional distress, anxiety, humiliation, embarrassment, and loss of self-esteem in an amount to be determined at trial.  Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless the Court grants relief.  Therefore, Plaintiff seeks all legal and equitable remedies available at law.

85.     As a further direct and proximate result of Defendant's violation of 42 U.S.C.A. §2000e-2, Plaintiff has been compelled to retain the services of the Law Offices of Edward J. Blum and will continue to incur legal fees and costs.  Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C.A. § 2000e-5(k) and 29 U.S.C. § 2000e-16(d) where in any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, a reasonable attorney's fee (including expert fees) as part of the costs, and the United States shall be liable for costs the same as a private person.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully requests that this Honorable Court:

A.     Assume jurisdiction of the aforesaid causes of action and the parties;

B.     Issue a judgment declaring and finding that Defendant's actions, practices and procedures as stated above constitute employment discrimination in violation of Plaintiff's rights as secured by Title VII, as amended;

C.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race, sex, and color in violation of Title VII, as amended;

D.    Order Defendant to make Plaintiff whole, as he was adversely affected by the employment discrimination alleged herein, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

E.    Order Defendant to reinstate Plaintiff or to make him whole by providing him with front pay, in amounts to be determined at trial, to eradicate the effects of Defendant's unlawful employment practices;

F.    Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 20 through 59 above, in amounts to be determined at trial;

G.    Order Defendant to make Plaintiff whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 20 through 59 above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life humiliation, etc., in amounts to be determined at trial;

H.    Enter an award and judgment for attorneys' fees and costs; and

I.    Grant Plaintiff such additional relief as may be just and proper to fully return him to the status he would have enjoyed but for the discriminatory animus and retaliatory conduct of the Defendant.

Dated:  December 18, 2018                    _____/s/_____
                                                            EDWARD J. BLUM

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands trial by jury on all issues so triable.

Dated:  December 18, 2018                    _____/s/_____
                                                            EDWARD J. BLUM